# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JAMES CAMP,

    Petitioner,

-vs-                                                Case No. 8:16-cv-1011-T-02JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

James Camp, a Florida prisoner, initiated this action, through counsel, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254 (Doc. 1). The court ordered Respondent to show cause why the relief sought in the petition should not be granted (Doc. 2). Thereafter, Respondent filed a response in opposition (Doc. 6), to which Mr. Camp replied (Doc. 10). Upon consideration, the petition will be denied.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On August 4, 2009, Mr. Camp was charged by an Amended Information with sexual battery by a person eighteen years of age or older upon a child less than 12 yeas of age, and lewd or lascivious molestation by a person 18 years of age or older upon a child less than 12 years of age (Respondent's Ex. A1). The Amended Information indicated that the sexual battery occurred "on one or more occasions between October 13, 1996 and October 12, 1999. . .", and the lewd or lascivious molestation occurred "on one or more occasions between October 1, 1999 and October 12, 1999. . ." (Id.). A jury found Mr. Camp not guilty of the sexual battery charge, but guilty of the lewd and lascivious molestation charge (Respondent's Ex. A3).

He filed a motion to vacate the conviction on the ground that the statute of limitations barred prosecution of the offense, which was denied (Respondent's Ex. A6). He was sentenced to 20 years in prison, to be followed by 10 years sex offender probation (Respondent's Ex. A7). His conviction and sentence were affirmed on appeal (Respondent's Ex. B3).

Mr. Camp filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging several grounds of ineffective assistance of trial counsel (Respondent's Ex. C1). The Rule 3.850 motion was denied (Respondent's Exs. C5, C6, C7), and the denial was affirmed on appeal (Respondent's Ex. C11).

Mr. Camp thereafter filed his federal habeas petition in this court (Doc. 1). He alleges two grounds for relief:

> 1. Whether Mr. Camp's rights under Article I of the United States Constitution were violated through ex post facto prosecution of a statute that was enacted subsequent to the date of the alleged crime charged, which would have been precluded by the statute of limitations under the statute in effect at the time of the alleged commission of the offense of conviction; and
>
> 2. Whether the Petitioner's due process rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated because of the failure of trial counsel to use evidence that clearly demonstrated that the victim witness's allegations were during a time clearly outside of the statute of limitations in violation of the ex post facto prohibition under Art. I, Sec. 10, Cl. 1 of the United States Constitution.

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Camp filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to

2

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

3

from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## III. ANALYSIS

### Ground One

Mr. Camp contends that his conviction violates the ex post facto clause of the United States Constitution. "The United States Constitution prohibits a state from passing an 'ex post

facto Law.'" *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (citing U.S. Const. art. I, § 10). "An ex post facto law is a law that 'appl[ies] to events occurring before its enactment' and that 'disadvantage[s] the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime.'" *Doe v. Miami-Dade Cty., Fla.*, 846 F.3d 1180, 1183 (11th Cir. 2017) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (alterations in original)).

Mr. Camp asserts that the crime for which he was convicted was alleged to have occurred between October 1, 1999, and October 12, 1999. During that period of time, Florida law provided that the prosecution for the offense of lewd or lascivious molestation, if the victim was under the age of sixteen at the time of the offense, had to be commenced within four years from the date of the victim's sixteenth birthday.[1] See § 775.15(2)(a), (7), Fla. Stat. (1999). However, effective October 1, 2001, the law was amended to provide that the prosecution for the offense had to be commenced within four years from the date of the victim's eighteenth birthday, which in this case was October 2009. See § 775.15(2)(a), (8), Fla. Stat. (2001).[2]

Mr. Camp argues that the State was bound by the statute of limitations in effect on October 12, 1999, the final date charged in the Amended Information. If that was the applicable statute of limitations, it expired in October 2007, four years after the victim's sixteenth birthday. Consequently, the initial Information, filed January 22, 2009, would have been barred as untimely. The state trial court, however, determined that the Information was not untimely because the amended statute of limitations was retroactively applicable to Mr. Camp's offense.

---

[1] The victim was born in October 1987 (Respondent's Ex. A8, transcript p. 301). She therefore turned sixteen in October 2003. Accordingly, under the statute of limitations effective in 1999, the State would have had to initiate prosecution no later than October 2007.

[2] Section 775.15(7) was renumbered as 775.15(8).

Mr. Camp contends that application of the amended statute of limitations retroactively to him violated the prohibition against ex post facto laws.

Mr. Camp raised this claim in both the state trial and appellate courts (see Respondent's Exs. A5, B1). In denying the claim, the state trial court found that under the amended statute, the State had until October 2009 to file charges against Mr. Camp, since the victim turned eighteen in October 2005 (Respondent's Ex. A6, record pp. 106-07). The court concluded that the amended statute should be retroactively applied to Mr. Camp's case because the state legislature clearly indicated that the amended statute was to apply retroactively to cases pending when the statute became effective, and the amended statute took effect in 2001, long before prosecution of Mr. Camp's offense would have been barred by the statute of limitations that was in effect at the time of his offense (Id., record pp. 107-09). The appellate court affirmed the denial of this claim without a written opinion (Respondent's Ex. B3).

Mr. Camp has failed to establish that the state courts' decisions were contrary to clearly established Supreme Court law. He has not identified any existing federal law that was contrary to the state courts' rejection of this claim. Federal courts have upheld legislative extensions of unexpired statutes of limitations. *See, e.g., United States v. Madia*, 955 F.2d 538, 539-40 (8th Cir. 1992) (legislature may extend the period of limitations without violating the ex post facto clause if original period of limitations has not yet run); *U. S. ex rel. Massarella v. Elrod*, 682 F.2d 688, 689 (7th Cir. 1982) ("Extending a limitation period before a given prosecution is barred does not violate the ex post facto clause."), *cert. denied*, 460 U.S. 1037 (1983); *United States v. Morgan*, 113 F.3d 1230 (2d Cir.) ("Congress has the power to extend the period of limitations without running afoul of the ex post facto clause, provided the original period has not already run."), *cert. denied*, 522 U.S. 1027 (1997); *United States v. Taliaferro*, 979 F.2d 1399,

7

1402 (10th Cir. 1992) ("[T]he application of an extended statute of limitations to offenses occurring prior to the legislative extension, where the prior and shorter statute of limitations has not run as of the date of such extension, does not violate the ex post facto clause."). Because the statute of limitations in effect at the time of Mr. Camp's offense was still running when the amended statute of limitations took effect, application of the amended statute to Mr. Camp's offense did not violate the ex post facto clause.

Mr. Camp has failed to demonstrate that the state courts' denial of this claim was contrary to clearly established federal law, or that it was based on an unreasonable determination of the facts. Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two**

Mr. Camp contends that trial counsel was ineffective in failing to use evidence demonstrating that the victim's allegations referred to events that occurred "outside of the statute of limitations." He alleges that he provided information to defense counsel that proved the offenses could not have taken place in the bedroom in which the victim testified they occurred because the victim had moved out of that bedroom well before the dates that were identified (October 1, 1999 through October 12, 1999) in the Amended Information. Specifically, he asserts that he provided counsel with receipts from April 1999 for baby furniture purchased by his mother for his son, who was born on July 12, 1999. He further asserts that his mother could corroborate the purchases of that furniture, and testify that the victim had moved out of the subject bedroom before the furniture was purchased because that bedroom was being renovated in preparation for the arrival of Mr. Camp's soon-to-be born son.

This claim was raised in state court in Issues III and V of Mr. Camp's Motion to Vacate Judgment and Sentence (Respondent's Ex. C1). In Issue III, Mr. Camp contended that trial

counsel was ineffective in failing to impeach key state witnesses (Id., pp. 16-18). He alleged, in pertinent part, that counsel should have impeached the victim with evidence that showed that at the time the victim alleged the offenses occurred, she no longer "resided" in the bedroom where she testified that the offenses happened (Id., p 17). Mr. Camp asserted that the evidence showed the victim had moved into another bedroom in preparation for the birth of Mr. Camp's son in July 1999, and the subject bedroom had been converted into a nursery (Id.). In Issue V, Mr. Camp contended, in pertinent part, that counsel was ineffective in failing to call Mr. Camp's mother to testify (Id., pp. 26-29). He alleged that his mother would have corroborated that at the time the offenses allegedly occurred, the victim no longer occupied the bedroom in which she claimed Mr. Camp molested her (Id., p. 27). She would have testified that Mr. Camp's newly born son occupied that bedroom at that time (Id.). He argued that his mother's testimony would have suggested that the offenses could not have been committed in the manner described by the victim, because she had not occupied the subject bedroom for several months before the time the alleged offenses occurred.

In response to Mr. Camp's claims, the State argued that Mr. Camp's purported evidence would not have impeached the victim's testimony because the victim "never specified whether the abuse happened in her original bedroom, the added-on bedroom, or both." (Respondent's Ex. C2, pp. 4, 7). In denying these claims, the state post-conviction court stated:

### Ground Three

> . . .Defendant alleges that counsel was ineffective for failing to impeach the State's key witnesses. Specifically, Defendant alleges that counsel failed to impeach the victim with evidence that she had testified incorrectly about the location of her bedroom at the time of the crime. . . .Defendant contends that he was prejudiced by these failures, because counsel did not refute the witnesses' allegations.

. . .Defendant states that the victim changed bedrooms late in 1998, moving from a bedroom in the house to a bedroom added on in the garage. Therefore, Defendant argues that the room described by the victim at trial was the room where she resided prior to 1998. Defendant claims this testimony created grounds for impeachment because the victim was not residing in this room between October 1, 1999 and October 12, 1999, the dates alleged in the Information.

Upon review of the portion of the transcript to which Defendant refers, it is clear that the description of the home offered by the victim is in reference to encounters that took place between the victim and Defendant before 1999. Even though these encounters were not charged in the Information, they were permitted as *Williams* Rule evidence. Accordingly, because the victim's description of the bedroom was consistent with the time period that she was discussing, there was no basis for impeachment. As such, counsel was not deficient for failing to impeach this portion of the victim's testimony.

***

### Ground Five

In his fifth ground, Defendant alleges that counsel failed to prepare a defense, failed to call an important fact witness, and failed to call an expert witness. . . .Each of these issues will be addressed separately.

#### A. Failure to Prepare a Defense

Defendant claims that counsel failed to prepare a defense because he did not impeach the victim's testimony, he did not depose witnesses, and he did not file a motion to dismiss. Regarding the impeachment of the victim, this issue was raised and addressed in Ground Three; therefore, the Court need not address it again here.

***

#### B. Failure to Call an Important Fact Witness

Defendant next claims that counsel was ineffective for failing to call Defendant's mother, Beverly Camp, to testify. Defendant alleges that Beverly Camp would have been a key witness to impeach the victim's testimony regarding the room she occupied at the time of the crime. However, as noted in the denial of Ground Three, the room identified by the victim was the room in which she resided prior to the date of the crime. Therefore, the testimony of Beverly Camp would not have impeached the testimony of the victim. As such, there was no prejudice for failing to call her as a witness.

10

(Respondent's Ex. C5, pp. 6-7, 8, 10) (footnotes omitted).

The state post-conviction court found that the victim did not testify that the offenses Mr. Camp committed between October 1, 1999, and October 12, 1999, occurred in the bedroom she no longer occupied, but rather testified regarding prior encounters that occurred between her and Mr. Camp before she had moved out of that bedroom. This factual finding is "presumed to be correct," and Mr. Camp has not met his "burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1).

The trial transcript reveals that the victim never testified that the encounters between her and Mr. Camp in October 1999 occurred in the bedroom that she moved out of before it was renovated for Mr. Camp's soon-to-be born son (Respondent's Ex. A8, transcript pp. 301-47). Rather, the victim testified to prior encounters between her and Mr. Camp that occurred in that bedroom when she was "between eight and nine" years old (Id., transcript pp. 306-07). That testimony therefore referenced encounters in that bedroom that occurred in either 1995 or 1996, not in October 1999.[3]

Because the victim never testified that the encounters between her and Mr. Camp in October 1999 occurred in the bedroom she no longer occupied at that time, the receipts for the baby furniture purchased in April 1999, and Mr. Camp's mother's testimony that the victim no longer occupied that bedroom in October 1999, would not have served to impeach the victim's testimony. Moreover, the evidence would not have established that it was "impossib[le]" for Mr. Camp to have committed, between October 1, 1999 and October 12, 1999, the offenses for

---

[3] The testimony regarding the prior acts Mr. Camp committed was admitted as "Williams Rule" evidence (Respondent's Ex. C5, p. 6). "The '[Williams Rule]' refers to the rule announced in *Williams v. State*, 110 So.2d 654 (Fla.), *cert. denied*, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), a case holding that evidence of other crimes is admissible in a criminal trial if relevant to prove anything other than the bad character of the defendant or his propensity to commit the crime charged." *Fla. v. Burr*, 496 U.S. 914, 915 n. 1 (1990) (alteration in original).

which he was charged. Accordingly, defense counsel did not render deficient performance in failing to introduce the evidence.

Because the state post-conviction court's decision that defense counsel was not deficient in failing to impeach the victim with this evidence was not an unreasonable application of *Strickland* nor based on an unreasonable determination of the facts in light of the evidence presented to the state courts, Ground Two does not warrant federal habeas relief.[4]

Any of Mr. Camp's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **Clerk** shall enter judgment accordingly and close this case.

2. A Certificate of Appealability is **DENIED** in this case because Mr. Camp cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**DONE AND ORDERED** in Tampa, Florida on June 25th, 2019.

WILLIAM F. JUNG
United States District Judge

SA: sfc
Copies to: Counsel of Record

---

[4]Mr. Camp appears to contend that no evidence was presented showing he committed an offense between October 1, 1999 and October 12, 1999, for which he was charged in Count 2 of the Amended Information (See Doc. 1, p. 19, ¶ 60). The Court disagrees. The victim testified that between those dates, Mr. Camp touched her breasts and buttocks (see Respondent's Ex. A8, transcript p. 347, lines 13-19), offenses for which Mr. Camp was charged in Count 2 (See Respondent's Ex. A1, record p. 65).